## Joseph S. Sater & Wm. Wade *vs.* David Hendershott, for the use of Redman and Eberman.

### *Error to Desmoines.*

Where the endorsement of a note is special, and made in the usual manner, the legal interest passes entirely to the endorsee, and he can only sue in his own name.

Such an endorsement is a transferable contract, between the endorser, on the one side, and any subsequent holder on the other, and can only be rescinded by the

mutual agreement of those parties. When the note comes again into the owner-ship of the payee, both these parties become united in his person, and he can then erase all the endorsements.

The mere fact that a suit is instituted in the name of the payee, for the use of the endorsee, is of itself no evidence that the payee is in *possession* of the note, and still less that he is entitled to bring suit thereon.

Before the statute of Iowa, in relation to promissory notes, it is doubtful whether the endorsee could sustain debt on a negotiable instrument. In case of a sealed instru-ment therefore, which has been specially endorsed, inasmuch as the action must be debt, the endorsee may sue in the name of the payee, to his use. The law will not in such cases compel him to try doubtful experiments.

The payee of a sealed note, when he endorses it over in blank, thereby authorizes the endorsee to sue in his (the payee's) name, for the use of the endorsee; for the law enters into and forms a part of the contract. If therefore, after the note is thus endorsed, a statute authorizes the endorsee to bring debt thereon, in his own name, and even declares a transfer of the legal interest to him, this will not prevent him from suing in the name of the payee, for his own use, for this would be impairing the obligation of a previous contract.

Action of debt commenced by defendants in error against plaintiffs in error. Plea, non est factum. Judgment for plaintiffs below; and bill of exceptions as follows:

" Be it remembered that on the trial of the above cause the plaintiff offered in evidence, as the ground of his action, a note or bond executed by the said defendants to David Hendershott or order, which said instru-ment had been specially assigned by said Hendershott, and also several subsequent assignments (which will more fully appear, reference being had to said instrument now on file in said cause.) The defendant then offered to prove by said Hendershott, that he had assigned away his interest and right of action in said note or bond, and that he had never since said assignment, by any trade or otherwise, acquired any right of any description to said note or bond, and also moved the court for a nonsuit, on the ground that said Hendershott had parted with his inter-est and right of action in said note or bond and that said suit could not be maintained in his (said Hendershott's) name; both of which said motions by said defendants were overruled by the court; and the court decided that although said Hendershott had parted with his interest in said note or bond, and although the legal right to the same was in a third person, yet the said suit could be maintained in the name of the original payee, and that said defendants would not be admitted to bring evidence to prove that the right of action was not in said plaintiff. The endorsements on the note above mentioned were erased previous to the

trial, except that the pen was not drawn through the name of D. Hendershott. To which said several opinions and instructions of the court the defendants by their attorneys except, &c."

The following is a copy of the writing obligatory, or note referred to in the case, with the endorsements:

"On or before the twenty-fifth day of December next, we or either of us, promise to pay David Hendershott, or order, one hundred and seventy-five dollars, for value received of him. Witness our hands and seals this tenth day of April, 1837.

JOSEPH S. SATER, [SEAL.]
WILLIAM WADE, [SEAL.]

Warren county, Illinois."

"I assign the within to John F. Eberman and Nancy Redman, without any recourse on me.
Dec. 2, 1837.                    D. HENDERSHOTT."

"I assign the within to Haywood Reed, for myself and Nancy Redman, without recourse on us, this 12th day of December, A. D. 1837.

JOHN F. EBERMAN."

"Pay the above to John Pierson, without recourse on me.
December 16th, 1837.                    HAYWOOD REED."

BROWNING & RORER, for plaintiffs in error.

GRIMES, for defendant in error.

The counsel for plaintiffs in error, rely on the following points and authorities:

FIRST, That the payee of a negotiable note cannot maintain a suit in his own name on such note, if he has negotiated the same, and the legal interest of the note is in another.

SECOND, To enable such payee to maintain an action in his own name after transfer, he must regain the legal interest and possession by some act or circumstance equal in law to that by which he disposed of such note, to wit: such as a reindorsement to him by the endorsee, and delivery thereof in accordance with such *reindorsement.*

THIRD, That the instrument sued on in this cause is a negotiable note within the meaning of the statute. It is payable to the payee "or

*order;*" and the Michigan statute, which was in force at the date of said note, declaring what notes should be negotiable, extends, in express language, to "*all notes* in writing," &c., regardless of a seal. But this note was made in Illinois. See laws of Illinois, 482—sec. 3 Blackford's Rep. 437—1 Gill & Johnson's Rep. 175—3 Wheat. Rep. 172—1 Ch. Pl. 10—4 Cond. E. Rep. 649—Ibid. 1, 416—1 Cranch, 152—1 Wheat. Rep. 233—1 Wash. Cir. Rep. 424—5 Wheat. Rep. 277—Ch. on Bills, 30.

BROWNING. In case where payee has endorsed the note in blank, it is no evidence of assignment, and payee may maintain action in his own own name. Where the assignment is *special*, payee cannot maintain action in his name. The only thing that distinguishes this note from an ordinary note is the seal. If note is made to Hendershott or order and assigned, in an action brought in name of Hendershott, any subsequent transaction cannot be given in offset.

GRIMES, for defendant. The fact of an individual having a note in his possession, is presumptive evidence that he is owner. The endorsements were all erased, and we do not see how the court could take cognizance of them. Bank of Utica vs. Smith—Ch. on Bill, 257; 1 Dall. 193, Morris vs. Forman; Am. Dig. 68; 1 So. Car. R. From these authorities it appears that a party may strike out endorsements and maintain action in his own name.

RORER. Hendershott could not sue in his own name unless legally endorsed back, or he had purchased the note back in course of trade, and struck out the endorsements. They had no right to strike out the endorsements unless Hendershott had purchased it back, of which there was no evidence. Where a note comes back to payee, he can strike out the endorsements and bring suit in his own name. But this does not apply where the payee comes into court and swears that it had not come back to him, as he did in this case. He swore that he had assigned away said note and had never afterwards acquired an interest in it.

The counsel say that possession in Hendershott is evidence that it had come back to him. But this cannot be evidence where it is rebutted by positive evidence that it had not come back to him.

The seal upon a note makes no difference.

If the statute is remedial, it only makes the note more negotiable.

BY THE COURT, MASON, CHIEF JUSTICE.—Had the instrument declared on in this case been an ordinary promissory note, the case would

16

have presented little difficulty.   Where a note of that kind is endorsed in blank, the endorsee may sue in his own name, or in the name of the payee for his own use.   The latitude of authority contained in the blank endorsement, being sufficient for either purpose, and conferring that option upon the endorsee.

But where the endorsement is special the case is different.   If made in the usual manner, (as in the present instance) the legal interest passed entirely to the endorsee.   No choice is left him.   He cannot regard himself as agent or attorney of the payee to collect the money for his own use; which a blank endorsement would have authorized him to do.— The will of the endorser is specifically expressed, and becomes a part of the instrument.   The endorsee has no more right to erase or change the endorsement than he has the face of the note.   He can only sue in his own name.

The note may however again come into the legal possession of the payee, either in the course of trade, or by making payment in discharge of his liability to the endorsee.   In either of these cases he would have a right to erase the endorsements, whether general or special, and to bring the suit in his own name as payee.   The reason why this erasure could not be made by any other person is, that the endorsement is a species of transferable contract, or at the least the evidence of one— which neither party alone has a right to rescind.   The parties interested in that contract are the payee of the note on the one side, and any endorsee and holder of the note on the other.   By the mutual agreement of these parties, all the endorsements may be erased.   When the note comes again into the legal possession of the payee, both the parties in interest in the contract aforesaid, become united in the same individual, who has therefore power to expung all the endorsements on the note, and to sue in the same manner as though he had never parted with the possession of it.

There is some diversity of opinion as to the proof necessary to show that the note has again come into the legal possession of the payee.   In Dugan vs. The United States, 3 Wheat. 183, it was held that it was not necessary for the payee to produce any receipt or endorsement back to himself.   The bare possession of the note by the endorser has sometimes been held *prima facie* evidence that he was again the legal owner thereof, 1 Dall. 193 and note.   But in the case of Long et al. vs. McCarty, 2 Dall. 147, proof of actual payment to the endorsee was considered necessary to enable the endorser to sue in his own name.

But whatever be the strength of the presumption in favor of the payee, who has again obtained the actual possession of the note, the mere fact of a suit being instituted in his name for the use of the endorsee, is of itself no evidence whatever that the payee is in possession. The endorsee may have brought the suit in that form without his consent or knowledge. At all events, the mere institution of a suit in that form, raises no presumption that the payee is again in the legal possession of the note, and was so held in the case of Bowie for the use of Ludd et al. vs. Duval, 1 Gill and John. 175. If therefore the instrument on which this suit was brought had been a mere promissory note, there was evidently error in the court below.

That instrument was however under seal, which places the case in quite a different attitude. In the absence of special statutory provisions on the subject, this would be the safest if not the only mode, in which the endorsee of a writing obligatory could institute his action against the maker. The instrument being under seal the action must be debt, and there is very high authority for the conclusion that the endorsee cannot sustain debt against the maker of a negotiable instrument. See Chitty on Bills 672. But more especially Chitty's Pleadings 117 and 124.— If this be the case, and if the endorsee be also prevented from suing in the name of the payee for his own use, he will be denied all remedy. A conclusion which never can be tolerated. Whether the endorsee can sustain debt against the maker or not we will not now further inquire: but in the face of so respectable authority a plaintiff ought never to be driven to the necessity of trying such doubtful experiments. The safe and proper mode to have brought the suit, would have been that adopted in the present case.

But it is contended that the statute of Michigan, which was in force here when this instrument was executed and endorsed, had changed the former law in this particular. That statute makes "all notes in writing" negotiable, and authorises the endorsee, to maintain an action thereon against the makers and endorsers in like manner as in inland bills of exchange and not otherwise. Now there is much doubt whether this statute is broad enough to embrace sealed instruments, but even if it were, it only authorizes the endorsee to maintain an action "in like manner as in inland bills of exchange *and not otherwise.*" If at that time, the action of debt would not have lain by the endorsee against the maker, that statute can hardly be considered as changing the law in this particular, and depriving the endorsee of the privilege of bringing suit in the accustomed form. We therefore conclude that the law as it existed

at the time this instrument was executed and endorsed, permitted the endorsee to use the name of the payee as the plaintiff in an action against the maker.

But the statute of Iowa which took effect a few days previous to the institution of this action, not only renders sealed instruments negotiable, but authorizes the endorsee to maintain "the same kind of action" against the maker, as might have been maintained against him by the obligee or payee, in case there had been no assignment of the bond or note, &c. The endorsee could now clearly maintain the action of debt against the obligee or payee, and perhaps on an instrument endorsed subsequently to the passage of that act, the endorsee would be bound to sue in his own name. But not so where the endorsement was made prior to the taking effect of that statute.

It is true that the form in which the action is brought, is a matter that pertains to the remedy to a certain extent, rather than to the rights of the parties. This is so much the case, that although an instrument had been assigned prior to the enactment of the Iowa statute, when the law required the assignee to sue in the name of the assignor, still (if the terms of that statute are sufficiently comprehensive) that some assignee might sue in his own name. Yet if he prefers, he may bring suit in the name of the assignor, for such is the implied permission given in the assignment. The law at the time entered into the agreement between the endorser and endorsee, and the former thereby authorized the latter to sue the maker in his (the endorsers) name. The subsequent law has not deprived him of this right. We are therefore of the opinion that the endorsee in the present instance, had a right to sue in the name of Hendershott, for his use; and that the decisions of the court below were therefore correct.

Judgment affirmed accordingly.